# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 2747 | **DATE** | 11/13/2001 |
| **CASE TITLE** | Andrew Carroll vs. Village of Homewood, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 12/6/2001 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment [85-1] is granted in part and denied in part. A status hearing is ordered for December 6, 2001 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | number of notices | | | |
| | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | NOV 16 2001 | | | |
| ✓ | Docketing to mail notices. | | date docketed | | | 105 |
| | Mail AO 450 form. | | | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | | |
| | courtroom deputy's initials | ...OCKETING ...NOV 15 PM 5:10 | date mailed notice | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | | |

ANDREW CARROLL,                          )
                                         )
                          Plaintiff,     )      Case No. 97 C 2747
                                         )
          v.                             )
                                         )
VILLAGE OF HOMEWOOD, et al.,             )      Judge Joan B. Gottschall
                                         )
                          Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Andrew Carroll has brought this action alleging claims under 42 U.S.C. § 1983 and state law claims against the Village of Homewood, Illinois and three Homewood police officers, Derrick Harris, Kevin Kaiser, and Patrick Siemsen. The claims arise from Carroll's arrest on charges of driving under the influence of alcohol ("DUI"). The defendants have moved for summary judgment on all of Carroll's claims. For the reasons set forth below, the motion is granted in part and denied in part.

## Background

Carroll is employed as a police officer for the Village of Oak Lawn, Illinois. On February 9, 1996, Carroll and his wife attended an Oak Lawn police function in Evergreen Park, Illinois. At the police function, Carroll testified that he drank two 12-ounce glasses of Miller Lite beer between 11 p.m. and 12:15 a.m. Carroll had a few sips of another beer before 11 p.m. that night. While at the banquet, Carroll removed his contact lenses because the smoke in the room bothered his eyes, making them red and watery. Carroll and his wife were returning home through Homewood at approximately 2:45 a.m. when Carroll stopped his vehicle at a White Hen convenience store to use the restroom and purchase a few grocery items. As Carroll turned into

*105*

the store parking lot, Kaiser followed in his police car and activated the emergency lights.[1]
Kaiser asked Carroll to get out of his car, then administered field sobriety tests. Carroll claims
that when he exited his car, Harris's squad car was also in the parking lot.

Carroll claims that he informed Kaiser that he needed to urinate and asked several times
if he could use the restroom in the store, but Kaiser refused. Before the sobriety tests, Carroll
testified that Kaiser asked Carroll if he had his weapon on. Carroll responded that he did.
Carroll testified that Kaiser then told Carroll that he could take his weapon off, put it in Kaiser's
car, or secure it in Carroll's own car for Kaiser's safety. Kaiser then administered the sobriety
tests. After the field sobriety tests, Kaiser arrested Carroll for DUI and also issued citations for
speeding and improper lane usage. Carroll claims that when he asked why he was being placed
under arrest, Kaiser told him that he was being arrested because Carroll was a "loud mouth
nigger." (Carroll Dep., Defs.' Statement Material Facts Ex. M at 323:8-9 ("Defs.' Ex. M").)

Kaiser arrested Carroll and Harris transported him to the Homewood police station.
Carroll claims that while he was in Harris's car, he again requested to use the restroom but Harris
ignored him. At the station, Carroll again informed Kaiser and Harris that he needed to urinate
and asked them if he could use the bathroom. Kaiser told Carroll that he could not use the
bathroom. Kaiser told him that it was departmental policy that persons being arrested for driving
under the influence of alcohol be observed for twenty minutes and that he had to wait until the
paperwork and processing were complete before he would be allowed to use the bathroom.

---

[1]Carroll alleges that this was not his first encounter with Kaiser. He alleges that in
October, 1995, he was stopped by Kaiser while on his way to work. Although Kaiser claimed
that Carroll was speeding, Kaiser did not issue a ticket. Carroll claims that after following up
with the Homewood police department, he was told not to travel through Homewood again.

Approximately one hour after he was taken into custody, Carroll urinated in his pants in front of Kaiser and Harris and other members of the Homewood Police Department. Carroll claims that Kaiser then ridiculed Carroll. Carroll testified that within minutes after he urinated, he heard the breathalyzer machine buzz. The machine produced a ticket that read "refused." (Harris Dep., Pl.'s Ex. 4, 151:8-10.) Defendants claim that Carroll refused to take a breathalyzer test; Carroll denies this.

At approximately 6:30 a.m. that same day, Carroll was awakened in his jail cell by defendant Siemsen. Siemsen processed an I-Bond for Carroll and drove him home. Carroll claims that Siemsen later wrote a false supplemental report for the Homewood Police Department. In the report, Siemsen claimed that Carroll told him that he had not taken the breathalyzer test because he knew that he was over the legal limit for the consumption of alcohol. Carroll denies making any such statement and denies that he consumed alcohol in excess of the legal limit. Carroll signed an Alcohol and Drug Evaluation Report Summary that indicates that he had one shot and four beers within four hours. Carroll admits that he signed the document but claims that he never read it before signing.

Carroll claims that because of the allegedly false report by the Homewood Police Department that he had refused to submit to a breathalyzer test, Carroll received a mandatory six-month statutory suspension of his driver's license. As a result of the suspension, Carroll was unable to drive a squad car, as was required by his job. In April 1996, a hearing on Carroll's petition to rescind the mandatory suspension was held in the Circuit Court of Cook County. At the hearing, the trial judge ruled that the suspension should be rescinded for lack of probable cause. Despite the result of the license suspension hearing, the Cook County State's Attorney

3

proceeded with the prosecution of the charge against Carroll for DUI. In November, 1996, Carroll was acquitted of that charge. However, the state judge did find Carroll guilty of speeding and improper lane usage.

In the Complaint, Carroll alleges five counts. Count I alleges a § 1983 claim against Kaiser and Harris for false arrest and excessive force/unlawful punishment under the Fourth Amendment. Carroll also asserted the same claims under the Fourteenth Amendment, but this court earlier dismissed the Fourteenth Amendment claims. *See Carroll v. Village of Homewood, et al.*, No. 97-2747 (N.D. Ill. Dec. 16, 1998). Count II alleges an equal protection claim against Kaiser and Harris. In Count III, which is alleged against the Village of Homewood, as well as Kaiser and Harris in their official capacities, Carroll challenges the policy of prohibiting a person arrested for driving under the influence from using a bathroom during a twenty-minute observation period and during the time the officers are completing paperwork and processing. Carroll argued that this policy violated his substantive due process right under both the Fifth and Fourteenth Amendments. However, this court determined that the claims arising out of Carroll's arrest and detention must be based on the Fourth Amendment, not due process. *See id.* In Count IV, Carroll asserts a state-law claim for malicious prosecution against Kaiser, Harris, Siemsen, and the Village of Homewood. Count V is a claim for intentional infliction of emotional distress against Kaiser, Harris, Siemsen, and the Village of Homewood.

Defendants have moved for summary judgment on every count.

### Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

4

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## I. Count I: False Arrest and Excessive Force/Unlawful Punishment

In Count I, Carroll alleges § 1983 claims for false arrest and excessive force/unlawful punishment against Kaiser and Harris in their individual capacities. In the false arrest claim, Carroll alleges that he was arrested for DUI without probable cause. For the excessive force/unlawful punishment claim, Carroll alleges that Kaiser and Harris violated his Fourth Amendment rights by, *inter alia*, denying him use of the restroom and ridiculing him when he urinated in his pants.

To show liability under § 1983, Carroll must prove two essential elements: that the conduct complained of (1) "was committed by a person acting under color of state law" and (2) "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). It is undisputed that both Kaiser and Harris were

5

acting under color of state law in their duties as police officers. Thus the question is whether

they deprived Carroll of constitutional rights.

## A. False Arrest

Defendants argue that they are entitled to summary judgment on the false arrest claim

because there was probable cause to arrest Carroll for DUI.[2] "[T]he existence of probable cause

for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or

malicious prosecution." *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). First,

defendants argue that the issue of probable cause was resolved during a prior state criminal

proceeding, at which defendants contend that probable cause was found, and thus Carroll is

collaterally estopped from relitigating the issue. Defendants also argue that, whether collateral

estoppel applies or not, there was, in fact, probable cause for the arrest. Furthermore, defendants

appear to contend that they have qualified immunity with respect to Carroll's claims because

there was "arguable probable cause." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998).

Finally, defendants argue that Harris should not be a defendant in this count because he was not

involved in the arrest of Carroll.

### 1. *Collateral Estoppel*

First, defendants contend that the state court findings collaterally estop Carroll from

relitigating the issue of probable cause in this action. "A federal court applies state collateral

estoppel law in determining whether a state court judicial determination precludes relitigation in

a Section 1983 claim." *Schertz*, 875 F.2d at 581 (7th Cir. 1989). Under Illinois law, the

collateral estoppel doctrine applies when four conditions exist: (1) there has been a final

---

[2]Defendants also rely on this argument in Counts II, IV, and V.

determination on the merits; (2) the issues for which estoppel is sought were essential to the previous decision; (3) the party against whom estoppel is sought had a full and fair opportunity to address the issue; and (4) the issues are identical to the issues in the case in which estoppel is sought. *Crot v. Byrne*, 957 F.2d 394, 396 (7th Cir. 1992).

Defendants argue that at Carroll's trial for DUI and the traffic violations, Judge Condon held that Carroll failed the sobriety test. The defendants seem to argue that this finding was a *de facto* finding that there was in fact probable cause for Carroll's DUI arrest. However, at the trial Judge Condon did not explicitly make any finding about whether there was probable cause, or even whether Carroll failed the sobriety test. In fact, Judge Condon had earlier rescinded Carroll's license suspension because he had found *no* probable cause for the arrest. At trial, Judge Condon found that Carroll had trouble completing the sobriety test, but found that was a direct result of his need to urinate. Carroll was acquitted of the DUI charge at his trial. This court cannot hold that the issue of probable cause has seen a "final determination on the merits." If anything, the state proceedings cast doubt on whether there actually was probable cause to arrest Carroll for DUI. The only final determination in the state case is that the state failed to prove beyond a reasonable doubt that Carroll was guilty of DUI. However, the issue of probable cause was not determined.

Defendants also argue that Carroll abandoned his right to challenge probable cause during the trial because he filed, then withdrew, three pre-trial motions which challenged, *inter alia*, the probable cause basis for his arrest. Finally, defendants point out that Carroll was denied his motion for a directed finding in the state criminal trial. Defendants seem to argue that these facts should have a res judicata effect on the issue of probable cause. Once again, the court fails to see

7

how Carroll has been dealt an unfavorable ruling on probable cause at the state-court level. Furthermore, because the state criminal case and the present case are not the same cause of action, res judicata is not properly applied. *See People v. Weilmuenster*, 670 N.E.2d 802, 808 (Ill. App. Ct. 1996) ("Res judicata precludes relitigation of a *single cause of action* between two parties.") (emphasis added). Thus, the previous state proceedings do not provide collateral estoppel or res judicata arguments for either Carroll or defendants. The court must consider whether probable cause, in fact, existed.

2. *Probable Cause*

The police have probable cause to arrest a person where "the facts and circumstances within their knowledge and of which they [have] reasonable trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Bergren v. City of Milwaukee*, 811 F.2d 1139, 1142 (7th Cir. 1987) (internal quotations omitted). The court evaluates probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer*–seeing what he saw, hearing what he heard." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (internal quotation omitted). The court should note, however, that "Section 1983 claims presenting the question of probable cause are generally inappropriate for disposition on summary judgment . . . where there is room for a difference of opinion." *Schertz*, 875 F.2d at 582.

There are genuine issues of material fact regarding whether there was probable cause to arrest Carroll for DUI. First, Kaiser testified that Carroll did not request to use the restroom until he was arrested, after the sobriety tests. Kaiser also testified that Carroll's eyes were bloodshot

and glassy and there was a strong odor of alcohol on his breath. Kaiser added that Carroll's speech was slurred and slow. Kaiser testified that he administered four field sobriety tests to Carroll: the finger-to-nose, the walk-and-turn, the one-leg-stand test, and the horizontal gaze nystagmus test. Kaiser finally testified that Carroll failed each test and Kaiser determined that Carroll was intoxicated. Harris testified that in his opinion Carroll was intoxicated at the scene of the arrest, based on the way he performed the field sobriety tests, the fact that his eyes were bloodshot, and the fact that Carroll was swaying. Harris also testified that he detected the odor of alcohol coming from Carroll while they were in the processing room and in the squad car. At first glance, it appears that this testimony is sufficient for a finding of probable cause. *See Wells v. City of Chicago*, 1999 WL 169333 (N.D. Ill. March 16, 1999) (holding that officers had probable cause for DUI arrest, as a matter of law, where officers reported that arrestee showed signs of intoxication, in spite of arrestee's contradictory testimony).

On the other hand, Carroll claims that on the evening of February 10, 1996, he had consumed only two beers and eaten two full meals starting at 8 p.m. Carroll's wife testified that he had shown no signs of intoxication earlier that night. Carroll attributes any erratic movements to the fact that he had a great urge to urinate. Carroll claims that he asked to use the restroom repeatedly before he was arrested. Carroll's wife testified that she heard him request to use the restroom before his arrest. Both Carroll and his wife testified that Carroll was exhibiting physical signs of having to urinate badly. Furthermore, Carroll points to the fact that Kaiser allowed Carroll to handle his loaded gun at the scene of the arrest. Carroll was in uniform during the encounter with Kaiser, and Kaiser had asked Carroll to remove his weapon and place it in his car. Defendants do not appear to dispute this. Carroll argues that if Kaiser truly felt that Carroll

9

was intoxicated, he would not have allowed him to handle his weapon. Finally, Carroll testified that when he asked Kaiser why he was being arrested, Kaiser called him a "loud mouth nigger." (Carroll Dep., Defs.' Ex. M at 323:8-9.) This statement would tend to cast doubt on probable cause to arrest Carroll. Defendants seem to deny the statement.

Although the testimony of the arrestee may not carry considerable weight, other facts cast doubt on whether there was probable cause. At the hearing before the Circuit Court on Carroll's petition to rescind the statutory suspension of his driver's license, Judge Condon found that Carroll's inability to complete the field sobriety tests was "directly attributable to his failure to urinate and not to his consumption of alcohol." (Defs.' Ex. G at 184:18-19.) Furthermore, at Carroll's trial for DUI, Judge Condon stated that during Carroll's encounter with Kaiser, "there really [wasn't] any question that he [had] to go to the bathroom, because [they were] all talking about it, right from the start, almost from the moment he [got] out of the car." (Defs.' Ex. L at 63:4-8.) Furthermore, Judge Condon noted that during the field sobriety test, "Mr. Carroll's ability to follow instructions seemed to me to be just fine." (*Id.* at 62:18-19.) It is difficult to discern from these comments whether a reasonable police officer could have believed that probable cause existed in this situation. At the very least, there is more than enough room for a difference of opinion. There is a genuine issue of material fact about what facts were before defendants when they arrested Carroll, "seeing what [they] saw, hearing what [they] heard." *Sheik-Abdi*, 37 F.3d at 1246. Therefore, summary judgment is not warranted on the issue of probable cause.

3. *Qualified Immunity*

Defendants have asserted the affirmative defense of qualified immunity under Count I.

Although defendants seem to focus their qualified immunity arguments on the excessive force claim, the court will consider the defense on the false arrest claim as well. The court has already determined that factual disputes preclude a finding of probable cause on summary judgment. However, "qualified immunity provides the officers with an additional layer of protection against civil liability if a reviewing court finds that they did not have probable cause." *Williams v. Jaglowski*, 2001 WL 1219266, at *2 (7th Cir. Oct. 15, 2001) (internal quotations omitted).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official's conduct violates clearly established law requires a two-step inquiry: (1) whether the law was clearly established when the challenged conduct occurred; and (2) "whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts." *Biddle v. Martin*, 992 F.2d 673, 675 (7th Cir. 1993). There is no dispute that Carroll had a clearly established right to be free from arrest without probable cause. Thus the court must focus on the second prong of the test.

a. "Arguable Probable Cause"

Qualified immunity shields defendants from Carroll's damage action if "a reasonable officer could have believed [Carroll's arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Hunter v. Bryant*, 502 U.S. 224 (1991) (internal quotation omitted). In an unlawful arrest case in which the defendants raise qualified immunity as a defense, the court must "determine . . . whether a reasonable officer could have

mistakenly believed that probable cause existed." *Humphrey*, 148 F.3d at 725. To determine

whether there was such "arguable probable cause," the court must decide whether "a reasonable

police officer in the same circumstances and with the same knowledge . . . as the officer in

question could have reasonably believed that probable cause existed in light of well-established

law." *Id.* (internal quotation omitted).

There are too many factual disputes for the court to resolve this issue on summary

judgment. Kaiser and Harris both testified that they believed Carroll was intoxicated based on

his appearance, behavior, and his performance of the sobriety tests. Kaiser testified that Carroll

did not ask to use the restroom until after he was arrested. However, Judge Condon concluded at

Carroll's criminal trial that his inability to complete the sobriety tests was due to his need to

urinate. In addition, the judge determined that Kaiser must have known that Carroll had to

urinate. Both Carroll and his wife testified that Carroll was not intoxicated and did not appear to

be. They also testified that Carroll asked to use the restroom before his arrest. If Carroll was

clearly not intoxicated and if it was also clear that his trouble completing the sobriety test was

caused by his need to urinate, then defendants could not reasonably have believed there was

probable cause to arrest Carroll for DUI. The dispute is not about whether a reasonable officer

would have believed there was probable cause; rather, the dispute is about what information the

arresting officer actually possessed. Because of these disputes, it is not possible to determine

what "knowledge" Kaiser had and thus whether a reasonable officer could have reasonably

believed that probable cause existed.

b. Closely-Related Charges

Even if there was no actual or arguable probable cause, "in § 1983 actions for false arrest,

12

probable cause need not have existed for the charge for which the plaintiff was arrested, so long as probable cause existed for arrest on a closely related charge." *Biddle*, 992 F.2d at 676. However, to rely on a closely-related charge, "the officers must show that the charge can reasonably be based on the same set of facts that gave rise to the arrest and that the charge offered as justification is one that 'would [have recommended] itself to a reasonable police officer acting in good faith' at the time the arrest was made." *Jaglowski*, 2001 WL at *3 (quoting *Richardson v. Bonds*, 860 F.2d 1427 (7th Cir. 1988)). Some courts have recognized two requirements for "relatedness": (1) the two crimes must relate to the same conduct; and (2) the two crimes must "share similar elements or be directed generally at prohibiting the same type of conduct." *Sheehy v. Town of Plymouth*, 191 F.3d 15, 20 (1st Cir. 1999). In essence, the court must "strike a balance which allows the arresting officer to choose which crime she will charge without having to charge every single offense sustainable on the facts, and yet does not 'open [] the door to the extrapolation of offenses in an effort to justify a sham arrest.'" *Biddle*, 992 F.2d at 676 (quoting *Trejo v. Perez*, 693 F.2d 482, 485 (5th Cir. 1982)).

Defendants argue that, even if they lacked probable cause to arrest Carroll for DUI, they had probable cause to arrest him on the closely-related charge of the traffic violation for improper lane usage. The court cannot agree. The relationship between these offenses shares few similarities with cases where courts actually found charges to be closely related. *See Biddle*, 992 at 676 (defendant shouted and swore at officer for almost ten minutes while refusing to give his name and identification) (obstruction of a police officer charge sufficiently related to disorderly conduct justification); *Sparing v. Village of Olympia Fields*, 77 F. Supp. 2d 891 (N.D. Ill. 1999) (defendant allegedly lied to police officer about investigation) (obstruction of a police officer

charge sufficiently related to disorderly conduct justification).

The charges of improper lane usage and DUI do not relate to the same conduct, nor do they prohibit the same type of conduct. The only similarity between them is that crossing the center line can be used as evidence of guilt for each. However, to make a DUI arrest, the arresting officer must witness much more evidence than crossing the center line. *See People v. Wingren*, 521 N.E.2d 130, 135 (Ill. App. Ct. 1988) (probable cause to arrest a motorist for DUI exists with the odor of alcohol, slurred speech, and red and glassy eyes). In this case, Kaiser claims that he stopped Carroll because Carroll crossed the center line. However, Kaiser testified that he arrested Carroll for DUI based on several more pieces of evidence: his breath, his eye color, and his behavior during and after the sobriety tests. None of these facts would support a charge of improper lane usage. Carroll has successfully raised a question as to whether Kaiser extrapolated the DUI charge from non-existent facts in order to justify a "sham arrest." The offenses are not closely related.

Ordinarily, qualified immunity should be granted *before* trial if there is any reasonable basis to conclude that probable cause existed. *Biddle*, 992 F.2d at 676. However, the court must base this decision on what the arresting officer knew at the time of the arrest. In this case there is a factual dispute about what information the officers actually possessed. Summary judgment is inappropriate on this claim.

4. *Defendant Harris*

Defendants argue that Harris should not be a defendant in this case because he had no duty to intervene during Kaiser's arrest of Carroll. Harris testified that he was only standing by and observing the night of the arrest and that he did not feel that he should interfere in another

14

officer's traffic stop. Carroll argues that Harris indeed had a duty to intervene. With respect to the false arrest claim specifically, Carroll seems to argue that Harris "fail[ed] to intervene with Kaiser's administration of the field sobriety tests, [and] he didn't stop Kaiser from falsely arresting Carroll." (Pl.'s Mem. Opp. Def.'s Mot. Summ. Judg. at 7.)

"[U]nder certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Harris can be held liable under § 1983 if he was present during the arrest and had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* [Harris] had a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

Carroll does not offer much evidence to show that Harris had a duty to intervene in Carroll's alleged false arrest. Nevertheless, there appears to be a sufficient degree of factual dispute that summary judgment is not warranted as to defendant Harris. Harris testified that he felt Carroll was intoxicated based on his appearance and his behavior at the scene of the arrest. However, Carroll and his wife testified that Carroll was not intoxicated and did not appear to be. Carroll admitted at his deposition that he did not know whether Harris heard Kaiser call Carroll a "loud mouth nigger," although he was 15 or 20 feet away at the time. (Carroll Dep., Defs.' Ex. M at 323:8-9.) However, Carroll testified that when he was placed in Harris's squad car, he said to Harris, "your partner just called me a loud mouth nigger" and "are you going to go along with this bigot?" (Carroll Dep., Defs.' Ex. M at 326:2-3, 327:2-3.) Harris denies hearing this from Carroll. If it was clear to Harris that Carroll was not intoxicated and that Kaiser had ignored his pleas to use the restroom, Carroll's comment to him could be enough to create a duty to

intervene. *See Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982) ("Although he understood that [the arrestee] was requesting help, [the officer] made no effort to assist her, nor even to discover whether her complaint was justified.").

Defendants argue that Harris should not be a defendant because he was not involved in the arrest. The court disagrees. If Carroll was clearly not intoxicated, if Harris knew that Carroll had a need to urinate, if Harris knew that Kaiser told Carroll that he was a "loud mouth nigger," and if Harris transported Carroll to the police station, Harris may be liable under § 1983. *See Gagnon*, 696 F.2d at 21 (officer was liable for false arrest where he not only declined to intercede on defendant's behalf but also assisted his partner in detaining her); *Thorner v. City of Harvey*, 1998 WL 355526 (N.D. Ill. 1998) (officer may have failed his duty to intervene where he witnessed other officer deliberately batter defendant, he assisted in the physical arrest, and he covered up his partner's wrongdoing in a report). The factual discrepancies must be resolved by a fact finder to determine what Harris in fact knew and heard.

Summary judgment is denied on the false arrest claim.

## B. Excessive Force/Unlawful Punishment

Defendants argue that their refusal to allow Carroll to use a bathroom does not constitute a constitutional violation. In addition, defendants argue that they are entitled to qualified immunity on this claim. Finally, defendants argue that Harris is not an appropriate defendant under this claim.

### 1. *Constitutional Violation*

As discussed, this court has already determined that Carroll's excessive force claim is exclusively grounded in the Fourth Amendment because the alleged constitutional violations

16

occurred during Carroll's seizure, not during pre-trial detention. *See Carroll v. Village of Homewood, et al.*, No. 97-2747 (N.D. Ill. Dec. 16, 1998). In *Graham v. Connor*, 490 U.S. 386, 393 (1989), the Supreme Court held that the proper standard to use in an excessive force case such as this is "reasonableness," not "substantive due process." *Id.* at 395. The "reasonableness" inquiry in excessive force cases is objective. "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Therefore, "subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry." *Id.* at 399. Factors to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

This case does not present the usual factual scenario under a Fourth Amendment "excessive force" claim because Carroll does not claim that the officers affirmatively used force on him or caused any physical injury. Rather, Carroll claims that the officers' refusal to allow him to use a restroom constituted the constitutional violation. This kind of claim is most often presented in terms of the Fifth or Eighth amendments. However, neither the Eighth Amendment nor the Due Process Clause is applicable on this count. The Seventh Circuit struggled with a similar issue in *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586 (7th Cir. 1997). In that case, an arrestee stopped breathing and died after police officers placed him in a prone position on the floor while handcuffed. The arrestee's estate sued the officers and the city, alleging, *inter alia*, that the officers failed to provide the arrestee with medical care when they seized him. "[I]t is somewhat awkward to conceptualize such an act or failure to act as 'excessive force'; indeed,

the duty to render medical aid is more often thought of as one arising under the Due Process Clause or the Eighth Amendment." *Id.* at 595. However, the court was bound, as this court is, to consider the claim under the Fourth Amendment alone because the alleged violations took place during the arrestee's seizure. The court noted that the Supreme Court in *Graham* used a Fourth Amendment analysis for a charge that officers ignored a diabetic petitioner's request for sugar. *See* 490 U.S. at 389. Thus, the Seventh Circuit held that a failure to act "could be cognizable under the Fourth Amendment." *Phillips*, 123 F.3d at 596 ("although the officers' actions here are not readily thought of as 'force,' the Fourth Amendment requires that seizures be *reasonable* under all the circumstances.").

Other courts have recognized a constitutional violation when police officers refuse to allow a plaintiff to use the restroom, albeit in a different context. *See Wells v. City of Chicago*, 1999 WL 169333 (N.D. Ill. March 16, 1999) (finding factual dispute on summary judgment where pre-trial detainee claimed that officer refused to permit him to use the restroom); *Willis v. Bell*, 726 F. Supp. 1118 (N.D. Ill. 1989) (holding that police officers who intentionally deprived detainee of food and use of the washroom for 12 hours may have violated due process); *Glaspy v. Malicoat*, 134 F. Supp. 2d 890 (W.D. Mich. 2001) (holding that corrections officer violated a visitor's substantive due process rights by refusing to permit him to use the restroom after an inmate and the visitor informed the officer that his need to use the restroom was urgent); *West v. Dallas Police Department*, 1997 WL 452727, at *5 (N.D. Tex. July 31, 1997) ("[A]n individual's ability to urinate or defecate in reasonable privacy is clearly established as a right which affords Fourteenth Amendment protection."). Certainly defendants may not escape liability in this case merely because the alleged violations occurred during a seizure rather than

during pre-trial detention. Thus, the court may consider whether the officers' refusal to allow Carroll to use the bathroom was an unreasonable, and therefore an unconstitutional, seizure.

There are disputed issues of material fact that prevent a finding of summary judgment on this count. Viewing the evidence in the light most favorable to Carroll, a jury could find that the officers' denial of bathroom use was unreasonable in light of all the information at their disposal. Although the total amount of time that Carroll was deprived of bathroom use was only one hour, Carroll claims that he clearly needed to use a bathroom from the moment he stepped out of his car. Defendants argue that Carroll did not ask to use the restroom until he was arrested. In addition, Harris testified that at the station, Carroll did not request to use the restroom until the observation period began. Carroll denies both of these claims, testifying that he repeatedly asked to use the restroom before and during the sobriety tests, in the car with Harris, and at the station before the observation period began. In addition, Carroll's wife testified that she heard Carroll request to use the restroom before he was arrested. Finally, Judge Condon found that it was obvious that Carroll had to use the restroom from the moment he exited his car. This creates, at the very least, a factual dispute about whether defendants knew that Carroll needed to use the restroom before his arrest and before the observation period. A reasonable jury could decide that defendants' refusal to allow Carroll to use the restroom, with the knowledge that he desperately needed to urinate, was unreasonable. *See Wells*, 1999 WL 169333; *Willis*, 726 F. Supp. 1118; *cf. Wilkes v. Borough of Clayton*, 696 F. Supp. 144 (D. N.J. 1988) (holding that arrestee's Fourth Amendment rights were affected by officer's maintenance of visual observation of arrestee while she changed a sanitary napkin).

Furthermore, there may be a question of Kaiser's attitude toward Carroll. Carroll testified

that after he urinated on himself, Kaiser ridiculed him. Moreover, there is a factual dispute regarding whether Kaiser called Carroll a "loud mouth nigger." Although the Fourth Amendment analysis is objective, when considering the credibility of a witness, "a factfinder may consider, along with other facts, evidence that the officer may have harbored ill-will toward the citizen." *Graham*, 490 U.S. at 399 n.12. The determination of "reasonableness" in this situation must be left to the finder of fact.

Defendants have offered a purported legitimate governmental purpose for their refusal to allow Carroll to use a bathroom, pointing to the twenty-minute observation policy promulgated by the Illinois Department of Public Health, Ill. Admin. Code tit. 77, § 510. Defendants argue that to obey that policy, they could not allow Carroll to use the restroom. This argument is vulnerable. First, the observation policy can account for only twenty minutes of the total hour that Carroll was deprived use of the bathroom. Carroll was also not permitted to use the bathroom before he was arrested, before Harris transported him to the police station, and at the police station before the observation period began. Defendants claim that Carroll did not request to use the bathroom until he was placed under arrest. However, Carroll has pointed to sufficient evidence that would show that both Harris and Kaiser knew or should have known that he had to use the restroom before and during the sobriety tests. Carroll further testified that Kaiser told him he was under arrest because he was a "loud mouth nigger." (Carroll Dep., Defs.' Ex. M at 323:8-9.) Finally, William Brey, the Chief of the Division of Alcohol and Substance Testing of the Illinois Department of Public Health from 1984 until September, 1992, testified that the state's observation policy *does not prohibit* a DUI arrestee from using the restroom to urinate before or during the twenty-minute observation period. Brey testified that the "best way" to

handle a washroom request is "to take [the arrestee] to the washroom, let him do what he has to do, bring him back, and start your 20 minute wait period." (Brey Dep., Defs.' Ex. P at 132:10-12.) Drawing all reasonable inferences in Carroll's favor, Carroll has successfully raised the possibility that Kaiser's reasons for the denial were unrelated to the state's twenty-minute observation period. The fact finder is best positioned to determine Kaiser's credibility.

## 2. *Qualified Immunity*

Defendants again claim immunity for their performance of discretionary functions–this time, the administration of the twenty-minute observation policy. Here the issue is whether defendants "could reasonably have believed that the force used did not violate the Fourth Amendment." *Graham*, 490 U.S. at 399 n.12. The court must ask this initial question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). The answer is yes, if the fact finder concludes that the denial of bathroom use was unreasonable. However, the inquiry does not end there. The court must also consider whether the officer reasonably believed that his conduct did not violate the Constitution. "An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Id.* at 2158.

There is a genuine issue of material fact regarding what the officers in fact knew and said during the encounter with Carroll. First, there is a dispute as to whether there was probable cause to even arrest Carroll for DUI. Second, there is a dispute as to when the officers knew that Carroll had a need to use the restroom. Third, there is a dispute as to whether Kaiser called

Carroll a "loud mouth nigger." Finally, there is a dispute as to whether the refusal to allow Carroll to use the restroom was reasonable. If the fact finder resolves all of these disputes in Carroll's favor, then the refusal to allow Carroll to use the bathroom cannot constitute a "reasonable mistake." This is in light of clear precedent that the denial of bathroom use can constitute a constitutional violation. Thus the court cannot grant summary judgment on the grounds of qualified immunity.

3. *Defendant Harris*

Defendants also argue that Harris should not be a defendant on the excessive force count. Carroll argues that even if Harris's own actions are not enough to make him liable, he had a duty to "admonish Kaiser to let Carroll use the restroom." (Pl.'s Mem. Opp. Defs.' Mot. Summ. Judg. at 7.) The issue is whether Harris was present while "any constitutional violation has been committed by a law enforcement official; *and* [Harris] had a realistic opportunity to intervene to prevent the harm from occurring." *Yang*, 37 F.3d at 285. The court agrees with Carroll that there are enough genuine issues of material fact to render summary judgment inappropriate on this issue.

As discussed previously, Carroll has sufficiently raised a question about whether Harris knew that Carroll had to use the restroom from the moment he got out his car and whether Harris heard Kaiser call Carroll a "loud mouth nigger." (Carroll Dep., Defs.' Ex. M at 323:8-9.) In addition, Harris had direct involvement in Carroll's seizure. First, Kaiser testified that Harris must have pressed the "refused" button on the breathalyzer machine, "or else 'refused' would never have been printed out." (Kaiser Dep., Defs.' Ex. O at 356:5-6.) This ensured that Carroll would undergo the state legal proceedings on the license suspension and his DUI criminal

charge. Carroll also argues that it denied him the only proof to exonerate himself at the state proceedings. Of course, defendants claim that Carroll explicitly refused to take the breathalyzer test. Carroll denies this. In addition, Carroll claims that he asked Harris in his car to use the restroom, and Harris ignored him. Furthermore, during the observation period, when Carroll stood up and attempted to walk to a bathroom, Harris stopped him. Drawing all inferences in favor of Carroll, a jury could find that Harris is liable under § 1983 by denying bathroom use to Carroll and by generating a "refused" ticket when Carroll did not, in fact, refuse to take the breathalyzer test. Defendants' motion for summary judgment is denied as to Count I.

## II. Count II: Equal Protection

In Count II, Carroll alleges an equal protection claim against Carroll and Harris. In order to establish liability for an equal protection violation, a plaintiff "must show that the defendants acted with a nefarious discriminatory purpose and discriminated against him based on his membership in a definable class." *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (citations omitted). Defendants contend first that Carroll's arrest was made with probable cause and therefore anything that Kaiser said to Carroll is not actionable. *See Helton v. Dornan*, 1999 WL 58641 (N.D. Ill. Jan. 26, 1999) (holding that with probable cause to arrest, allegations of racial epithets by arresting officers were not enough to withstand summary judgment on equal protection claim); *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1983) ("[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while 'unprofessional and inexcusable,' are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983."). However, the court has already found that factual disputes preclude a finding of probable cause. If there was no probable cause and Kaiser

23

indeed called Carroll a "loud mouth nigger" upon his arrest (a disputed fact), this is sufficient to support an inference of discriminatory intent.[3]

Defendants also argue that Harris is not an appropriate defendant on this count because he had no duty to intervene. Defendants argue that even if Harris heard Kaiser's allegedly racial remark, since Harris himself is African-American, Kaiser's comment cannot indicate any discriminatory intent by Harris. Carroll argues that Harris indeed heard Kaiser's remarks but did nothing to "intervene in a racially motivated arrest." (Pl.'s Mem. Opp. Defs.' Mot. Summ. Judg. at 7.) The court agrees with Carroll. The question is not whether Harris himself had a discriminatory purpose, but rather whether he was present while "any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang*, 37 F.3d at 285. If Harris knew that there was no probable cause to arrest Carroll for DUI *and* he knew that Kaiser had called Carroll a "loud mouth nigger," then he could be liable along with Kaiser on the equal protection claim. There is a dispute about what Harris in fact knew and heard; therefore, summary judgment is denied as to Count II.

## III. Count III: Twenty-Minute Policy

In Count III, which is predicated on § 1983, Carroll alleges that the Village of Homewood, as well as Kaiser and Harris, acting in their official capacities, violated his Fifth and Fourteenth Amendment due process rights through the policy of prohibiting suspects in DUI

---

[3]Defendants also seem to argue that because Carroll's claims arise out of his seizure, *only* the Fourth Amendment may apply, to the exclusion of the Equal Protection clause. The court has been unable to find, and defendants do not provide, any case law to support defendants' argument.

cases from using the restroom during a twenty-minute observation period and until paperwork

and processing are completed. However, this court determined that the claims arising out of

Carroll's arrest and detention must be based on the Fourth Amendment, not on due process. *See*

*Carroll v. Village of Homewood, et al.*, 97-2747 (N.D. Ill. Dec. 15, 1998). Therefore the court

will treat the claims as claims under the Fourth Amendment.

A § 1983 claim against public officials in their official capacity is equivalent to a suit

against the governmental entity itself. *Ibanex v. Velasco*, No. 96 C 5990, 1997 WL 467286, at *2

(N.D. Ill. Aug. 13, 1997). To recover damages, the plaintiff must allege that his constitutional

injury was caused by a custom or policy of the municipality. *Id.*; *see Monell v. Department of*

*Social Servs.*, 436 U.S. 658, 690 n.55 (1978).

Defendants argue that the Village did not create the written twenty-minute policy; rather,

it was "developed and promulgated by the Illinois Department of Public Health." (Defs.' Mem.

Supp. Mot. Summ. Judg. at 9.) Defendants argue that the policy is state mandated, and the

Village is required to follow it. The court agrees. Therefore, the issue under Count III is whether

the Village's *interpretation* of the twenty-minute policy is unconstitutional. To establish liability

under § 1983, Carroll must show either "(1) an express policy that, when enforced, causes a

constitutional deprivation; (2) a widespread practice that, although not authorized by written law

or express municipal policy, is so permanent and well settled as to constitute a custom or usage

with the force of law; or (3) . . . that the constitutional injury was caused by a person with final

policymaking authority." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995) (internal

citations and quotation marks omitted). Specifically, Carroll alleges that "the Village of

Homewood has developed and maintained a policy in which persons arrested for driving under

25

the influence of alcohol be observed for at least twenty minutes and that such persons are unreasonably prohibited from using the bathroom until all paperwork and processing are completed." (Compl. ¶ 31.)

Because Carroll cannot point to an express written policy with the requirement to prohibit arrestees from using the bathroom, and since Carroll does not claim that his alleged injury was caused by anyone with final policymaking authority, he must show "the existence of a widespread practice so permanent and well-settled to constitute a custom or policy with the force of law." *Ibanex*, 1997 WL 467286, at *2. Carroll argues that "at least one other DUI arrestee has been denied used [sic] of the restroom during detention for DUI by Harris, . . . , within weeks of Carroll's arrest." (Pl.'s Mem. Opp. Defs.' Mot. Summ. Judg. at 10.) However, Carroll fails to show how this is an example of a constitutional violation. This is insufficient to show any policy or custom promulgated by the Village that violates detainees' alleged constitutional right to use the restroom. *See Ibanex*, 1997 WL 467286, at *2 ("Allegations of a single incident of unconstitutional conduct usually cannot form a sufficient basis for establishing a policy of unconstitutional actions."). Summary judgment is granted as to Count III.

## IV. Count IV: Malicious Prosecution

In Count IV, Carroll alleges malicious prosecution against the Village of Homewood, Kaiser, Harris, and Siemsen under state law. The elements of a malicious prosecution claim in Illinois are: "(1) [T]he commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Frye v. O'Neill*, 520 N.E.2d 1233, 1240 (Ill. App. Ct. 1988), *appeal*

*denied*, 526 N.E.2d 829 (1988) (internal quotation omitted).

It appears that defendants' main objection to this claim on summary judgment is regarding whether there was probable cause to arrest Carroll.[4] The court has already found that factual disputes preclude a finding of probable cause to arrest Carroll for DUI. Therefore, summary judgment is inappropriate on this count as well.

## V. Count V: Intentional Infliction of Emotional Distress

In Count V, Carroll alleges a claim for intentional infliction of emotional distress against all defendants. To establish such a claim, a plaintiff must show that "(1) defendants' conduct was extreme and outrageous; (2) defendants intended to inflict severe emotional distress or knew there was a high probability that the conduct would cause such distress; (3) defendants' conduct did, in fact, cause severe emotional distress." *Treece v. Village of Naperville*, 903 F. Supp. 1251, 1259 (N.D. Ill. 1995).

Defendants seem to rely primarily on their argument that there was probable cause to arrest Carroll.[5] However, the court has already found that factual disputes preclude such a finding on summary judgment. Defendants also argue that Carroll has failed to cite any evidence of extreme and outrageous conduct. "In situations involving unlawful arrests or excessive force by police officers, there must be more than just a lack of probable cause or some excessive force. To qualify as extreme and outrageous, the force used must be very extreme or cause very severe physical injury. Whether a false arrest was totally lacking in justification will also be considered." *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1123 (N.D. Ill.1997). In this case,

---

[4]Defendants make no specific argument about defendant Siemsen's conduct.

[5]Defendants make no specific argument about defendant Siemsen's conduct.

Carroll alleges more than lack of probable cause or excessive force. As the court has stated previously, Carroll's being "arrested without probable cause, subject to a racial slur, forced to urinate in his pants, and forced to endure two separate legal proceedings related to the DUI charge . . ." are sufficient allegations to support a finding of intentional infliction of emotional distress. *Carroll*, No. 97-2747 (N.D. Ill. Dec. 15, 1998). It appears that "recitation of the facts to an average member of the community would arouse in him resentment against the actor, and lead him to exclaim 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill.1994) (quoting Restatement (Second) of Torts § 46 cmt. d at 73 (1965)). Because there are disputes about whether these allegations are true, summary judgment must be denied.

The court also rejects defendants' argument that Harris should not be a defendant in this context. There are disputes about whether Harris knew there was no probable cause, whether Harris knew that Kaiser called Carroll a "loud mouth nigger," whether Harris refused to let Carroll use the restroom, and whether Harris intentionally created a false result from the breathalyzer test. Summary judgment should not be granted on this issue.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: November 14, 2001

28